**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**FRIENDLY ICE CREAM CORPORATION, Respondent.**

**No. 81–1605.**

United States Court of Appeals, First Circuit.

Argued March 3, 1982.

Decided May 3, 1982.

W. Christian Schumann, Atty., with whom William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Washington, D. C., and Ronald L. Mason, Atty., were on brief, for petitioner.

Samuel Leiter, with whom Michael A. Fitzhugh, and Widett, Slater & Goldman, P. C., Boston, Mass., were on brief, for respondent.

Before ALDRICH, CAMPBELL and BREYER, Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

Except that it should not be here at all, this NLRB petition for enforcement is a relief from the summary discharges and other serious labor confrontations to which we are accustomed. Respondent Friendly Ice Cream Corporation was found guilty of violating sections 8(a)(1), 8(a)(3) and 8(a)(4) of the National Labor Relations Act, as amended, 29 U.S.C. § 158(a), by giving an allegedly retaliatory and discriminatory written warning to an employee, Rushton, for violating a no-solicitation rule.[1] Admittedly there was such a rule, facially valid, and, despite Rushton's denials initially and at trial, the ALJ supportably found that she broke it. Having lost there, General Counsel's second line of attack was that the record was "replete with credible evidence that Respondent permitted [other] solicitation in its Weymouth shop."[2] The ALJ, however, found much of the proffered testimony to be "incredible," and, finding the proven solicitations insufficiently significant, dismissed the charge. The Board reversed, finding respondent's enforcement of the rule discriminatory and retaliatory, in view of "Respondent's demonstrated union animus;" adding that "Respondent failed to present evidence sufficient to meet its burden of showing that Rushton's warning would have occurred in the absence of her protected activity."

In this last the Board has somewhat outdone itself. If, as the Board concedes, the no-solicitation rule was "presumptively valid,"[3] its enforcement also must be presumptively valid, and wherever may be the burden of proof, *cf. NLRB v. Wright Line*, 1 Cir., 1981, 662 F.2d 899, *cert. denied,* —— U.S. ——, 102 S.Ct. 1612, 71 L.Ed.2d ——, the presumption cannot be overcome by the mere fact that the violator may have been the chief union proponent. It might, of course, be overcome by that fact if coupled with a found inordinate penalty, but here the only consequence was a warning. Surely there cannot be a rule applicable to mild union supporters, with exemptions for the more active ones.

■ As to respondent's "demonstrated union animus," the original charges included threats of discharge, warnings that unionization would result in a closing, and a refusal to rehire another employee because of past pro-union conduct. These would have been classic union animus, but the ALJ believed none, finding the testimony supporting the first "so extreme as to be incredible," and the last "contrived . . . exaggerated . . . [and] widely divergent from the actual occurrences." Our review of his decision fully supports these conclusions. General Counsel sought to explain by charging "bias and partiality" on the part of the ALJ, a charge the Board dismissed in accepting his credibility findings. The only remaining "union animus" was that respondent, with 600 nonunion stores, paid close, but not improper attention to the organizational campaign; that it wrote an open letter to its employees fairly stating proper reasons for its position, and that it sought to enforce the rule. This is inadequate basis for a finding of "anti-union animus" in the context of a concededly valid, neutral no-solicitation rule. The only question is whether, in practice, the company failed to

---

1. The "written" warning was because of a previous first warning, for an unconnected, and uncontested offense.

2. We note also General Counsel's seeking to bolster her witnesses by endorsing them as having "truthfully testified"—a practice that would be improper in both criminal and civil court proceedings. *See, e.g., United States v.*

*Gonzalez Vargas*, 1 Cir., 1977, 558 F.2d 631, 633; ABA Code of Professional Responsibility, Rule 7–106.

3. *See Republic Aviation Corp. v. NLRB*, 1945, 324 U.S. 793, 803 n.10, 65 S.Ct. 982, 988 n.10, 89 L.Ed. 1372; *TRW, Inc. v. NLRB*, 6 Cir., 1968, 393 F.2d 771.

enforce the rule in a neutral way. Indeed, the Board's decision specifically rests upon its conclusion that respondent had disabled itself from enforcing the rule by reason of having tolerated breaches in the past that did not relate to unionization.[4]

■ The event here in question occurred in June, 1979. The rule, which had long been in existence, provided, in part, as follows.

1. NONEMPLOYEES—such solicitations and/or distribution by persons who are not employees is absolutely prohibited.

2. EMPLOYEES—such solicitation and/or distribution by employees is absolutely prohibited.

a. During actual working time.

b. At counters, booths, take-out windows, or in other sales areas, while customers are present.

c. In work areas, if interference with other employees on actual working time would result.

A given reason was to permit customers "to enjoy our products in wholesome, tension-free environment." The Board's finding as to tolerated violations was as follows.[5]

"[T]he credited evidence discloses three known but unpunished violations of the no-solicitation rule: in 1978, Store Manager Lynch purchased a candy bar from a customer in the selling area; sometime after March 1979, management-trainee Bisson purchased a raffle ticket from employee Peckham in the service area; and sometime between 1977 and 1979, employee Aronson and Store Manager Lynch purchased raffle tickets from a customer in the selling area."

Fleshing this out from the transcript, the circumstances of the candy bar incident were that in August, 1978, a regular customer, Loomis, sought to sell a candy bar to a waitress, a violation of section 1 of the rule. The waitress refused. The store manager approached the customer and told him that selling was against the company rules. According to the manager (who the ALJ found a credible witness) the customer became annoyed, and the manager purchased a candy bar himself. At the time of the purchase the manager was off duty, and drinking coffee with the customer.

The second cited incident was not shown to be a violation of respondent's rule at all. The management trainee did purchase a raffle ticket from a fellow employee, but they were both off duty "sitting in the last section of the store at the time." This would be a violation only if customers were present, or if it "interfere[d] with other employees on actual working time." The burden was on General Counsel and there was no evidence of either. The third incident involved a purchase of raffle tickets, again from Loomis, at an unknown date, sometime between 1977 and 1979.

Thus, in two years, a customer once sold a candy bar, and once sold raffle tickets, violations of Rule 1 governing nonemployees; and an employee, off duty, sold a raffle ticket to another employee, also off duty, not shown to be a violation of any rule. In other words, two forbidden solicitations by a customer, one of which the customer was

---

**4.** We devote only a footnote to the Board's finding "sustained hostility and animus toward the Union and its chief supporter, Rushton," by reason of its reminding employees of the rule's existence, and checking to see whether it was being respected. If it was permissible to have the rule, there was nothing improper about seeing that it was enforced at a time when its breach seemed especially likely. *See, e.g., TRW, Inc. v. NLRB*, ante, n.3. Nor can we think it reflects on respondent's motives that it made a detailed record of the fact that Rushton violated the rule. If it had charged her without a record, it is only too easy to imagine what the Board would have said. The further fact that respondent chose to accept the report of a part-time shift supervisor who had been with it several years without making inquiry of Rushton, we would not consider, standing alone, as establishing union animus.

**5.** The Board also referred to testimony that a manager had sometimes discussed the union and the representation proceedings with employees. It neglected to note that this was always in answer to employees' questions, and so could hardly be denoted "solicitation." Counsel here has wisely refrained from pressing this argument upon us.

asked not to repeat; no forbidden solicitation by an employee. From this the Board found that "Respondent consistently condoned solicitation during worktime." This finding not only reversed the ALJ's conclusion, but, by erroneously counting three events instead of two, improperly served as a basis for distinguishing its decision in *Uniflite, Inc.*, 233 N.L.R.B. 1108 (1977), on which the ALJ relied.[6] Its further describing the rule as "long dormant" is an example of the principle that where you come out depends upon where you go in. The abstract fact is that, on the evidence, the rule was observed every day but two, and on even one of those occasions management broke it for the special reason of attempting to mollify a customer when asking him to observe it. It is both loaded and inaccurate to call the rule long dormant. It is also, under the circumstances, demanding Utopian standards.

There is, of course, more behind this case than might appear at first blush. Rushton was not discharged or even penalized in a tangible way, *cf. Hosiery Corp. of America v. NLRB*, 4 Cir., 1970, 422 F.2d 784 (discharge), and the order is not directed at rescinding such. Rather, she is not even to be warned for violating the rule. In effect, by its order the Board would now permit respondent's employees, while on duty, to proselytize other employees, during working time, even in customer-occupied areas. For this extreme result the Board cited no authority. Counsel here cites *Gerry's Cash Market v. NLRB*, 1 Cir., 1979, 602 F.2d 1021, where we affirmed a conclusion of discriminatory enforcement where the Board had found that other types of conversations, "having substantially equal opportunity for interference with work" were "regularly permitted anywhere in the store." *Id.* at 1025, 1024. The findings in this case in no way fit that description.

Respondent's rule is conceded to be valid on its face. We cannot believe it reasonable to jettison it for such minor lapses. Indeed, this case should never have happened. The petition for enforcement is denied.

---

6. In *Uniflite* the Board described one raffle ticket purchase and one charitable donation solicitation as "two isolated incidents." It said, "Neither reflects the type of widespread worktime solicitation indicative of disparate applica-

tion of the rule." *Id.* at 1111. Even if two is company and three is a crowd, there was no crowd in the case at bar. We add that we would not consider even three minor violations such as these, in two years, to be a crowd.