Glenn POLANSKY, et al.,
Plaintiffs, Appellees,

v.

CNA INSURANCE COMPANY,
Defendant, Appellant.

No. 87–2086.

United States Court of Appeals,
First Circuit.

Heard May 4, 1988.

Decided July 25, 1988.

James S. Yakovakis, Manchester, N.H., with whom George W. Lindh was on brief, for plaintiffs, appellees.

Before CAMPBELL, Chief Judge, and BOWNES and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

Appellant CNA Insurance Company (CNA) seeks our review of the conduct of a jury trial at which it was found in breach of contract. The contract insured against damages to an apartment building owned by now bankrupt appellee, Londonderry Estates Realty Trust (the Trust), of which appellee Glenn Polansky was trustee. The contract also insured Polansky against liability to third parties for personal injuries. On New Year's Day, 1983, the apartment building partially burned, killing five people. A fire marshall concluded that the fire was of a suspicious but unknown origin. CNA concluded otherwise. It refused to reimburse Polansky, claiming that the policy was void because he had set the fire deliberately, had filed a fraudulent claim of damages, and through deception had impeded CNA's investigation of the conflagration. CNA believed that Polansky had set the fire to collect the insurance proceeds in order to rehabilitate the apartments. Based on the evidence presented at trial, the jury disagreed with these contentions and awarded the plaintiffs damages of $212,864.82. Due to the errors caused by the misconduct of plaintiff's counsel at trial, we rule that CNA is entitled to a new trial.

I

■ Plaintiff's counsel, throughout his closing argument, was unable to keep his opinions and personal beliefs to himself. The expression of his views included the following:

> Well, it wasn't convincing to me. I hope it wasn't convincing to you. TR at 10–11 (referring to credibility of defendant's explanation of substance on key piece of physical evidence).

Stephen M. Perry with whom Douglas K. Mansfield and Casner, Edwards & Roseman, Boston, Mass., were on brief, for defendant, appellant.

I say to you there is absolutely no way, in my opinion, that they would have agreed. TR at 10–18 (referring to possibility that mortgagees would have agreed to allow Polansky to use insurance money for repair of the apartment building, as CNA alleged Polansky had planned).

I don't believe Mr. Visocchi with regard to the vandalism claim. TR 10–21 (referring to a witness who testified Polansky had approached him to vandalize other property owned by Polansky).

[They are saying he] went up to the Londonderry Estates in the face of the fact that the mother came in [to testify]. She wouldn't—I would never ask her if she was coming in here to lie, and I knew anything about it, and this other gentlemen came in. They weren't coming in here to give an alibi. TR 10–27 (referring to the credibility of witnesses who vouched for Polansky's alibi of where he was when the fire started).

CNA is making it its business because they want to influence you with regard to [Polansky's illegal use of tenant deposit money], and show improprieties on his part, but I gather, in my opinion, it doesn't do that. TR 10–30.

[Y]ou'll find that CNA's motives, I think, were clear and calculated. TR 10–33.

On four occasions, CNA objected. Twice, the court stated simply that it would inform the jury that argument of counsel is not evidence; on the last two occasions it apparently ignored the exception.

This was error. Courts have long recognized that statements of counsel's opinions or personal beliefs have no place in a closing argument of a criminal or civil trial.

*See, e.g., United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985); *United States v. Cresta,* 825 F.2d 538, 555 (1st Cir.1987); *NLRB v. Friendly Ice Cream Corp.,* 677 F.2d 170, 171 n. 1 (1st Cir.1982); *Olenin v. Curtin & Johnson, Inc.,* 424 F.2d 769 (D.C.Cir.1970). This elementary principle is embodied in Rule 3.4 of the Model Rules of Professional Conduct, Disciplinary Rule 7–102(A)(5) and Ethical Consideration 7–26 of the Model Code of Professional Responsibility of the American Bar Association [1] and in Disciplinary Rule 7–106(C) of the Code of Professional Responsibility of the New Hampshire Bar Association.[2] The latter code governs attorney's conduct within the New Hampshire District Court. *See* New Hampshire District Court Rules, Rule 4. The rule helps prevent putting relative credibility of counsel at issue or allowing counsel to imply that he possesses knowledge not shared with the jury. *Cresta,* 825 F.2d at 555; Ethical Consideration 7–23. Alone, a blanket instruction from the court that argument of counsel is *not* evidence will not rectify a violation of this rule. *United States v. González Vargas,* 558 F.2d 631, 633 (1st Cir.1977). We will be particularly reluctant to condone such behavior of counsel when, as here, there has been timely objection, no provocation by the opposition, and no "timely curative instruction directed particularly to [counsel's] comments." *Id.* The court erred by not dealing promptly with counsel's remarks, upon timely objection by opposing counsel, and informing offending counsel that his expression of personal beliefs and opinions would not be tolerated by the court. *See Young,* 470 U.S. at 8, 105 S.Ct. at 1043.

---

**1.** Ethical Consideration 7–23 of the Model Code teaches that "[t]he expression by a lawyer of his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused is not a proper subject for argument to the trier of fact. It is improper as to factual matters because admissible evidence possessed by a lawyer should be presented only as sworn testimony. It is improper as to all other matters because, were the rule otherwise, the silence of a lawyer on a given occasion could be construed unfavorably to his client."

**2.** Disciplinary Rule 7–106(C) of the New Hampshire Code of Professional Responsibility state, in pertinent part:

> In appearing in his professional capacity before a tribunal, a lawyer shall not:
>
> \* \* \* \* \* \*
>
> (3) Assert his personal knowledge of the facts in issue, except when testifying as a witness.
>
> (4) Assert his personal opinion as to ... the credibility of a witness [or] as to the culpability of a civil litigant....

## II

Polansky's counsel also made extensive reference, during opening and closing statements, to his conclusion that the reason CNA was defending the suit was because it did not want to pay the families of those who died in the fire. These families were not parties to the suit and this argument was made for clearly inflammatory purposes. During his opening statement he made the following remarks:

> [T]he only party that can really gain in this matter from not making payment under this insurance policy to Londonderry Estates is the insurance company. And let me tell you why, because it's a little deceptive. The evidence is going to show that there were five deaths, and these people have claims pending against the insurance company. They're claiming—and it's part of the claim in this suit, that if you find that Mr. Polansky was involved in this fire loss, as they claim, all the claims that they are making, that the policy is void. And if that policy is void, guess what happens? There's no recovery by any—under any of these civil claims. TR 1–53.

> But I think that what they're doing in this case is worse, because they're using Mr. Polansky for their own benefit and gain, not paying him, holding a policy void so they don't have to pay on any of the civil claims. TR 1–54.

At the close of this argument, CNA moved for a mistrial. In the alternative, it asked that it be allowed to introduce evidence of its actual motives for opposing the claim. This referred to evidence that Polansky's counsel had successfully excluded, including evidence of prior criminal investigations of Polansky, which would be probative of CNA's state of mind when it decided to investigate the legitimacy of Polansky's claim. The judge denied CNA's motion and instead stated only that it would instruct the jury that a counsel's opening statement is not evidence.

At the end of closing argument, Polansky's counsel again referred to the "death claims."

I mention again that this fire occurred, five deaths, and all of the agencies investigating, they had CNA's reports, and none of them are making the claim that Mr. Polansky set the fire. Why? And I've asked myself this since I accepted this bankruptcy claim from the Court way back when. I think there's only one answer. That there was no basis for it, and this—if there is any basis, why is CNA making that claim, and I say that they're making it because they have their own reasons why they want to make it. One is they don't have to pay L.F. Richardson; two, they don't have to pay the bankruptcy court; three, they don't have to pay any of the death claims.

\*    \*    \*    \*    \*    \*

They have a million dollar liability limit on that death claim, that [no payment on the policy] would save, and they're clearcut liability claims. There's no smoke alarms [in the burned building]. This is evidence in this court. No electrical problems. Carpeting, as [a witness] said, extremely hazardous. My opinion that the paddings used in this installation presented extreme hazard, as far as flame appeal is concerned, and extremely hazardous hidden dangers in their emission of deadly gasses. Can you blame them for not wanting to defend the civil cases? Can you blame them? TR 10–31–32.

I respectively (sic) request your verdict for the . . . plaintiffs as a whole, and that your—and the preservation of those claims of the liability, and to the liability—under the liability actions. . . . *Id.* TR 10–35–36.

We note first that the "death claims" were completely irrelevant to this case. We disagree with Polansky that the existence of those claims was an appropriate topic of discussion because it tended to show CNA's "motive" for resisting payment under Polansky's insurance policy. CNA did not dispute the fact that it had not paid the claim and thus had refused to honor the insurance contract with Polansky. The only issue before the jury was whether CNA was justified in so doing

because Polansky had set the fire or otherwise had defrauded the insurance company. CNA's "motive" had absolutely nothing to do with the weight of the evidence regarding Polansky's actions. The relevance of CNA's motive to any issue in this case disappeared when, prior to trial, Polansky dropped his bad faith claim against the insurance company.

In fact, Polansky dropped the bad faith claim because, as his counsel admitted at oral argument, he did not want to allow CNA the opportunity to bring in evidence about why it had initially suspected Polansky. The record strongly suggests that he then attempted to reap a double benefit by preventing CNA from presenting evidence regarding its good faith while blatantly asserting that it was CNA's "bad faith" which motivated it to not honor the policy. This Polansky should not have been allowed to do. *See Johnson v. Trueblood,* 476 F.Supp. 90, 94 (E.D.Penn.1979) (counsel cannot allude to matters not supported by relevant, admissible evidence), *vacated on other grounds,* 629 F.2d 302 (3d Cir.1980).[3]

■ Even more troublesome to us is Polansky's thinly veiled yet successful attempt to introduce an emotional element into the jury's deliberations, an emotional element which could only have "an undue tendency to suggest decision on an improper basis...." Fed.R.Evid. 403, Advisory Committee Note; *see also Forrestal v. Magendantz,* 848 F.2d 303, 308 (1st Cir.1988) (condemning closing argument that encourages jury to depart from neutrality and to decide on basis of bias rather than the evidence). We agree with appellant that there is no surer way to prejudice a jury than to tell it that, if it finds against an alleged arsonist, the victims of those harmed by his actions will be deprived of an insurance recovery. The court committed serious error by allowing Polansky's counsel to present this argument to the jury. *Cf. Schleunes v. American Casualty Company,* 528 F.2d 634, 638 (5th Cir. 1976) (plain error found when plaintiff's counsel argued to jury that finding that

decedent had committed suicide, and thus finding in favor of insurance company, would mean condemning decedent to eternal damnation). Alone, this error may have been sufficient grounds for the district court to order a mistrial or for this court to order a new trial. *Cf. City of Cleveland v. Peter Kiewit Sons' Company,* 624 F.2d 749, 758 (6th Cir.1980) ("Without question, 'a trial lawyer is treading on dangerous ground and always approaches grounds for a mistrial by the mere mention of insurance when same is not at issue.' "). But there is more.

### III

■ An important factual issue at trial concerned a statement written by an agent of CNA and signed on every page by Polansky, stating that Polansky had been in the apartment of a friend during the entire five hour period preceding the fire. In actuality, however, he had left that apartment for more than an hour during that period. Polansky claimed he had not read the statement prior to signing it. He lacked motivation to read the statement, he asserted, because he had been previously told by CNA that he was not a suspect in the fire and that his claim would be settled in a week. To bolster this assertion at trial, his counsel sought to admit into evidence a letter written by his public adjuster, Berman, and sent to Mulligan, a CNA official, eleven days prior to the date of Polansky's statement. The letter stated that it was Berman's and Polansky's understanding that Mulligan told Polansky that he was not a suspect in the fire and that his claim would soon be settled. When Polansky's counsel broached the subject of the letter before the jury, CNA objected. The following exchange then occurred:

*Perry (CNA's counsel):* May we have a side bar on this, please? May I show this letter to you? It's clear hearsay, your Honor.

*Yakovakis (Polansky's counsel):* Your Honor, that [different] letter that went to Mr. Berman was also hearsay with

---

**3.** Consider also Model Code of Professional Responsibility, Ethical Consideration 7–25 ("a lawyer should not by subterfuge put before a jury matters which it cannot properly consider.").

regard to my client, and I allowed it to go before this jury so they could hear it. CNA's objection was then overruled and the letter was admitted into evidence.

The letter clearly was hearsay; in fact, it was "double" hearsay. It was (1) an out-of-court statement by Berman about (2) what he had been told by Polansky, and was offered to prove the truth of what Polansky believed regarding his status as a suspect. *See* Fed.R.Evid. 801(c). Polansky admits that the letter could not be admitted under any of the specific hearsay exceptions contained in Fed.R.Evid. 803(1)–(23) or 804(b)(1)–(4). He claims, however, that it was properly admitted under the "catch-all" exception of Rule 803(24).

■ We note first that neither the court nor Polansky's counsel indicated at trial that the letter should be admitted under any rule of evidence. Instead, counsel presented a sort of *quid pro quo* argument: since he didn't object when CNA sought to introduce a different letter, the court should allow him to introduce his letter. Polansky cites no authority for this rather novel rule of trial procedure and we obviously decline to adopt it.

■ If the letter was implicitly admitted under Rule 803(24), the court's decision was nonetheless erroneous. To be admissible under this exception, a statement, in addition to being probative of a material fact, must (1) have circumstantial guarantees of trustworthiness equivalent to other, named hearsay exceptions contained in the Federal Rules of Evidence; (2) be "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts," and (3) best serve "the general purposes of [the Federal Rules of Evidence] and the interests of justice." Fed. R.Evid. 803(24). Furthermore, the statement should not be admitted unless the opposing party has been informed, "sufficiently in advance of trial," that the proponent intends to offer the statement. *Id.*

Except for its possible probative value, the hearsay letter utterly failed to satisfy this standard. First, the letter did not have "equivalent circumstantial guarantees of trustworthiness." It is not, as Polansky would have us believe, similar to an admission by a party-opponent, *see* Fed.R.Evid. 801(d)(1): CNA had no knowledge of what Polansky told Berman and thus could not rebut Berman's assertions of what Polansky had said to him. It thus is not even vaguely similar to the situation of an admission by a party opponent, whereby "[n]o guarantee of trustworthiness is required ..." *Id.* Advisory Committee Note. Here, the letter was merely a self-serving statement written by a representative of the party who seeks its admission to prove the truth of what the letter implicitly asserts (*i.e.,* that Polansky did not believe he was a suspect because he had told Berman that Mulligan had told Polansky that he was not a suspect).

Second, the letter is not more probative on the point for which it is offered than any other evidence Polansky could have reasonably procured. Polansky was a witness at trial and could have testified regarding what he believed he had been told by the CNA official. Additionally, he could have subpoenaed the CNA official to testify about whether he had made such a statement to Polansky. Either approach would not have involved hearsay and thus would have provided much more reliable evidence than a friendly third party's letter alleging his recollection of Polansky's self-serving statement about what CNA had told Polansky.

Third, contrary to Polansky's assertions, justice was not best served by admission of the letter to counteract the influence of a hearsay statement submitted into evidence by CNA without objection by Polansky. As alluded to above, plaintiff asks us to approve the following rule: if plaintiff does not object to evidence possibly admitted against the rules of evidence, then plaintiff gets a free shot to violate those same rules. Justice, however, is not served by allowing parties to make up such new rules of civil procedure as they go along.

Finally, we address a rather troubling point. Polansky's counsel claims, and CNA denies, that he provided adequate notice to

CNA prior to trial, as required by Rule 803(24), of his intention to offer the letter into evidence. Since the requirements of this rule were otherwise not satisfied, we need not address this issue. What disturbs us, however, is the assertion by Polansky's counsel in support of his argument to this court that the letter "was marked as a plaintiffs' exhibit prior to the trial." Appellees' Brief at 36. Our review of the exhibits at trial reveals that the letter was marked as Plaintiff's Exhibit 34. Plaintiffs' exhibits numbered 25 and higher were marked by the clerk and added to the plaintiffs' exhibit list *during* trial. *See,* *e.g.,* Tr 4–6 and docket entry 110. In actuality, then, the letter was not marked as an exhibit prior to trial. This type of misrepresentation has no place before this court or in any other judicial proceeding.

### IV

■ Another error deserves brief mention. At one point during trial, Polansky's counsel was attempting to get the court to reconsider its decision to allow CNA's expert to testify in rebuttal to Polansky's expert, Dr. Sacher. The following exchange occurred:

> *Mansfield [CNA's counsel]:* Just a couple of corrections, your Honor. Dr. Sacher's testing was conducted after the close of discovery, after, in fact, we picked a jury the last time we were scheduled for trial. Moreover, that testing was done after I took his deposition, so I did not have the benefit through a deposition of examining him regarding his opinion, and I am simply asking for the opportunity to put in expert testimony on precisely the same subject and with the composition of this ring that Dr. Sacher's analysis will be about.

> *Yakovakis:* Your Honor, that's a complete false statement that was just made. This case was scheduled last fall. We picked a jury, and we were not reached. Dr. Sacher examined all this stuff long before that. He did his testing long be-

fore that, and the reports were done and his deposition was taken.

TR 8–111.

In actuality, the date of Dr. Sacher's deposition was October 17, 1986 (TR Vol. IX (mislabelled Vol. I) at 163), the original jury was empanelled October 20 (docket sheet at 4), and Sacher tested the sample some time thereafter (see TR Vol. IX at 164–68). The record, therefore, indicates that it was Mr. Mansfield who was speaking quite truthfully and that it was Mr. Yakovakis who made a "complete[ly] false statement." At least partially because of these misrepresentations by plaintiff's counsel, the court granted plaintiff's motion for reconsideration and excluded the testimony of CNA's expert which would have been used to rebut the testimony of Dr. Sacher. TR at 8–114.

■ While there may have been further misrepresentations made by plaintiff's counsel to the court at trial and to this court, as alleged by CNA, we need go no further. The errors at trial already discussed, caused primarily by the conduct of Polansky's attorney, were sufficiently numerous and collectively prejudicial to require that we order a new trial. In closing, we remind counsel that we do not view favorably any attempt "to play fast and loose" with our judicial system.[4] *See United States v. Levasseur,* 846 F.2d 786, 792 (1st Cir.1988); *Patriot Cinemas, Inc. v. General Cinema Corporation,* 834 F.2d 208, 212 (1st Cir.1987). Too often a lawyer loses sight of his primary responsibility as an officer of the court. While he must provide "zealous advocacy" for his client's cause, we encourage this only as a means of achieving the court's ultimate goal, which is finding the truth. Deceptions, misrepresentations, or falsities can only frustrate that goal and will not be tolerated within our judicial system. *See Wagner v. Williford,* 804 F.2d 1012, 1017 (7th Cir. 1986) (duty to client cannot override duty to

---

**4.** We suggest to counsel that, if he is to represent Polansky at retrial, he first thoroughly familiarize himself with, and take to heart, Ethical Considerations 7–24 and 7–25 of the ABA

Model Rules of Professional Responsibility and Disciplinary Rule 7–106 of the New Hampshire Code of Professional Responsibility.

respect system of justice); *Steinle v. Warren*, 765 F.2d 95, 101 (7th Cir.1985) (as "officer of the court ... [lawyer's] duty to the court is paramount, even to the interests of his client").

The decision of the district court is *vacated and remanded* for retrial.