The PEOPLE of the State of
Colorado, Petitioner,

v.

Roy Henry FULLER, Respondent.

No. 89SC19.

Supreme Court of Colorado,
En Banc.

March 5, 1990.
Rehearing Denied April 2, 1990.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Clement P. Engle, Asst. Atty. Gen., Denver, for petitioner.

Craig L. Truman, P.C., Craig L. Truman, Denver, for respondent.

Justice VOLLACK delivered the Opinion of the Court.

We granted the People's petition for certiorari in order to review the court of appeals decision in *People v. Fuller*, 772 P.2d 636 (Colo.App.1988). The court of appeals held that the district court committed reversible error by admitting two hearsay statements under CRE 804(b)(5), 7B C.R.S. (Supp.1989), without making the five findings identified in CRE 804(b)(5). *Id.* at 637. We reverse.

## I.

On November 18, 1984, the People charged defendant Roy Henry Fuller with first degree murder, § 18–3–102, 8B C.R.S. (1986), and conspiracy to commit first degree murder, § 18–2–201, 8B C.R.S. (1986), and asked for the mandatory sentence for violent crimes authorized by section 16–11–309, 8A C.R.S. (1986),[1] in connection with the death of the defendant's grandmother Helen Walker. At trial the People sought to prove that the defendant arranged to have his friend Stacy Kelly kill his grandmother. The People presented several witnesses who testified that the defendant disliked his grandmother. Jane Nunez, one of the defendant's friends, testified that the defendant said that he did not care for his grandmother. Robert Witholder, a friend of Stacy Kelly, testified that on several occasions the defendant told him he was "sick of his grandmother[ ] prying into his business." Ervin Hughes, a police officer who interviewed the defendant, testified that the defendant said he and his grandmother had "numerous loud arguments" which the neighbors might have heard.

Two other witnesses, Elsie Paddock and Dolores Story, testified about the defendant's hostility toward his grandmother, and it is their testimony which is the subject of this case. Elsie Paddock was a neighbor and close friend of the victim. She testified that in April of 1984 Helen Walker had surgery for a detached retina. The district attorney asked Mrs. Paddock if she knew what happened to cause Mrs. Walker's detached retina. The defendant objected on hearsay grounds.[2] The district

---

1. These citations refer to the statutes in effect at the time the defendant was charged. All have since been amended. *See* §§ 18–3–102 & 18–2–201, 8B C.R.S. (Supp.1989); § 16–11–309, 8A C.R.S. (Supp.1989).

2. "'Hearsay' is a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c), 7B C.R.S. (1986). Hearsay evidence is inadmissible unless

court ruled that Mrs. Paddock's testimony would be hearsay,[3] but was admissible under the hearsay exception established by CRE 803(24), 7B C.R.S. (Supp.1989).[4] Mrs. Paddock then gave the following testimony:

Q ... Mrs. Paddock, did Helen Walker tell you what caused her to have the detached retina?

A Yes, she did.

Q What did she tell you?

A That Roy had choked her. She told me this about two weeks prior to her death.

Dolores Story lived next door to Helen Walker from 1958 to 1984. She gave the following testimony without any objection from the defendant:

Q During the year 1984 on one or more occasions did [Mrs. Walker] have occasion to come over and talk to you about her grandson?

A Yes, she did.

Q Did she have any complaints?

A Yes, he had a gun, a loaded gun in her house and he threatened her with it a number of times.

Q Did she indicate what he was threatening her about or why he did this?

A No.

Q When you observed her was she fearful?

A Yes, she was. But she would stay at my house for a short time and go right back into the house.

On cross-examination Mrs. Story gave the following testimony:

Q Do you consider yourself to be one of Helen Walker's best friends?

A Yes, I was.

Q You've known her for about twenty years or so?

A Right.

Q Did you share personal information with her? Did she share personal information with you?

A Some, yes.

Q If Mrs. Walker was upset or troubled would it be fair to say you were one of the people she would talk to about that?

A Yes, she came over to my house a number of times because Roy had a gun in the house and had threatened her with it.

On appeal the defendant contended that the district court erred in admitting the hearsay testimony of Mrs. Paddock and Mrs. Story. The court of appeals held that the statements of Mrs. Paddock and Mrs. Story were inadmissible because the district court failed to make the findings required by CRE 804(b)(5). The court of appeals also held that the district court's "failure to make the requisite findings violated the defendant's constitutional right to confrontation." *Fuller*, 772 P.2d at 637. We conclude that the district court's failure to make specific findings under CRE 804(b)(5) was not reversible error in this case.

## II.

In this case we must determine whether the district court committed reversible error in admitting the hearsay statements of Mrs. Paddock and Mrs. Story. Because the defendant objected on hearsay grounds to the testimony of Mrs. Paddock, we consider first whether the trial court erred in admitting her testimony without making findings on the record that the statements met the

it fits one of the exceptions identified in the Colorado Rules of Evidence. *See* CRE 803 & 804.

**3.** The district court, the People, and the defendant were all aware of the substance of Mrs. Paddock's and Mrs. Story's testimony before they took the stand. *See* part III., below.

**4.** The trial court admitted Mrs. Paddock's statement under CRE 803(24), and did not rule on Mrs. Story's statement because the defendant

did not object. The court of appeals proceeded on the assumption that the trial court admitted the testimony of both witnesses under CRE 804(b)(5). These inconsistencies do not influence our analysis because CRE 803(24) and CRE 804(b)(5) are identical. In fact, because CRE 803(24) applies whether the declarant is available to testify or not, CRE 804(b)(5) is a redundant provision. *See Huff v. White Motor Corp.*, 609 F.2d 286, 291 n. 4 (7th Cir.1979).

requirements of CRE 804(b)(5). We analyze the admission of Mrs. Story's testimony separately in part IV. because the defendant raised no contemporaneous objection to her testimony.

CRE 803(24) and CRE 804(b)(5), which are identical, codify the "residual exception" to the hearsay rule. *See W.C.L., Jr. v. People,* 685 P.2d 176, 182 (Colo.1984). CRE 803(24) applies "even though the declarant is available as a witness." CRE 804(b)(5) applies if the declarant is unavailable as a witness.

CRE 804(b)(5) provides that the following is not excluded by the hearsay rule if the declarant is unavailable as a witness:

> A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

■ The five prerequisites to admissibility under CRE 804(b)(5) are that: the statement is supported by circumstantial guarantees of trustworthiness; the statement is offered as evidence of material facts; the statement is more probative on the points for which it is offered than any other evidence which could be reasonably procured; the general purposes of the rules of evidence and the interests of justice are best served by the admission of the statement; and the adverse party had adequate notice in advance of trial of the intention of the

proponent of the statement to offer it into evidence. CRE 804(b)(5); *People v. District Court,* 776 P.2d 1083, 1089 & 1089 n. 7 (Colo.1989); *Oldsen v. People,* 732 P.2d 1132, 1136–37 (Colo.1986); *see also* 4 J. Weinstein & M. Berger, *Weinstein's Evidence* § 803(24)[01] at 803–373 to 803–381 (1988). Trial courts have "a considerable measure of discretion" in applying this exception to the hearsay rule. *Huff,* 609 F.2d at 291; *cf. People v. District Court,* 776 P.2d at 1090.

In this case the district court admitted Mrs. Paddock's hearsay testimony with the statement that "I think under 803(24) I'll let it in." Thus there is no record of the district court's application of the five requirements of CRE 804(b)(5) to the hearsay testimony of Mrs. Paddock.

■ Before admitting a hearsay statement under CRE 804(b)(5) the trial court should establish that the statement satisfies the five prerequisites to admissibility explicitly identified in the rule. *Oldsen,* 732 P.2d at 1136–37; *see also Huff,* 609 F.2d at 292–95. Our desire to have trial courts make adequate findings on the record before admitting hearsay statements under CRE 804(b)(5) stems from our interest in limiting the application of the residual exception to the hearsay rule. *See Huff,* 609 F.2d at 291. We therefore hold that the district court erred in failing to make findings on the record that Mrs. Paddock's hearsay statements satisfied the requirements of CRE 804(b)(5).

### III.

■ Next we address whether the district court's error in failing to make on-the-record findings under CRE 804(b)(5) with regard to the testimony of Mrs. Paddock warrants a reversal of the defendant's conviction. We conclude that the defendant's conviction must be affirmed because the district court's error was harmless.

### A.

■ We first conclude that the trial court's error was harmless because under CRE 804(b)(5) Mrs. Paddock's testimony

was admissible. Federal courts have analyzed the admissibility of hearsay statements under Fed.R.Evid. 803(24) and Fed. R.Evid. 804(b)(5) in cases in which trial courts failed to make on-the-record findings, or based their rulings on other grounds.[5] The Seventh Circuit in *Huff*, 609 F.2d at 292–95, noted that the trial court did not mention the residual exception to the hearsay rule when it held the statement at issue to be inadmissible. The court stated that "[u]nder these circumstances, we have little choice except to attempt to replicate the exercise of discretion that would be made by a trial judge in making the ruling." *Id.; see also Polansky v. CNA Ins. Co.*, 852 F.2d 626, 631 (1st Cir.1988) (analyzing requirements of Fed.R.Evid. 803(24) on hypothesis that hearsay letter was admitted by trial court under that section); *Furtado v. Bishop*, 604 F.2d 80, 90–91 (1st Cir.1979), *cert. denied*, 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672 (1980).[6]

In *Oldsen v. People*, 732 P.2d at 1136–37, we upheld under the residual exception the district court's ruling admitting hearsay statements. In *Oldsen*, the trial court admitted the hearsay statements of a child victim of sexual assault under the "medical exception" to the hearsay rule contained in CRE 803(4). 732 P.2d at 1132. Before admitting the statements the district court allowed a psychologist, a physician, and a social worker who had interviewed the victim to testify to the trustworthiness of the victim's statements. *Id.* at 1134. CRE 803(24) and CRE 804(b)(5) had not become effective when the district court in *Oldsen* entered its order. *Id.* at 1136. When *Oldsen* reached this court we had already overruled *People In Interest of W.C.L., Jr.*, 650 P.2d 1302 (Colo.App.1982), upon which the district court in *Oldsen* relied. *See W.C.L., Jr.*, 685 P.2d at 176 (reversing *People In Interest of W.C.L., Jr.*). In *Oldsen*, 732

P.2d at 1136, we disapproved of the district court's reliance on the court of appeals decision in *People In Interest of W.C.L.* We noted, however, that on remand the case would be governed by CRE 803(24), which became effective after the district court's decision. We then analyzed whether the victim's statements would be admissible under CRE 803(24), and upheld the district court's ruling in *Oldsen* because the record revealed that the statements at issue were trustworthy, and our review of the record established that the other requirements of CRE 803(24) were satisfied. *Id.* at 1136–37. Our examination of the record in this case convinces us that although the district court erred in failing to make the findings required by CRE 804(b)(5), that error was harmless because Mrs. Paddock's hearsay statements met the requirements of CRE 804(b)(5).

First, the statements were supported by circumstantial guarantees of trustworthiness. Courts considering the trustworthiness of statements have examined the nature and character of the statement, the relationship of the parties, the probable motivation of the declarant in making the statement, and the circumstances under which the statement was made. 4 J. Weinstein & M. Berger, *supra* at 7, § 803(24)[01] at 803–376; *see also Polansky*, 852 F.2d at 631 (hearsay letter did not have circumstantial guarantees of trustworthiness because it was "merely a self-serving statement written by a representative of the party who seeks its admission to prove the truth of what the letter implicitly asserts"); *United States v. Marshall*, 856 F.2d 896, 901–02 (7th Cir.1988) (upholding ruling of trial court admitting hearsay testimony under Fed.R.Evid. 803(24) where hearsay declarants had no motive to lie). In this case Mrs. Walker made spontaneous

---

**5.** Fed.R.Evid. 803(24) and Fed.R.Evid. 804(b)(5) are identical to CRE 803(24) and CRE 804(b)(5), with the exception of one difference in the federal rules which makes them gender neutral. *See, e.g.*, Fed.R.Evid. 804(b)(5), 28 U.S.C.A. (Supp.1989).

**6.** Federal courts have extensively analyzed trial court rulings admitting, or failing to admit, evidence on the basis of Fed.R.Evid. 803(24) and

Fed.R.Evid. 804(b)(5). *See United States v. Doe*, 860 F.2d 488, 491–92 (1st Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1961, 104 L.Ed.2d 430 (1989); *United States v. York*, 852 F.2d 221, 224–26 (7th Cir.1988); *United States v. Guinan*, 836 F.2d 350, 353–58 (7th Cir.), *cert. denied*, 487 U.S. 1218, 108 S.Ct. 2871, 101 L.Ed.2d 907 (1988); *Huff*, 609 F.2d at 292–95.

statements to two close friends that she had known for many years. *See Chambers v. Mississippi*, 410 U.S. 284, 300, 93 S.Ct. 1038, 1048, 35 L.Ed.2d 297 (1973) (finding reliable statements "made spontaneously to a close acquaintance"). She reported to Mrs. Story on several occasions that the defendant kept guns in the house and threatened her with them. *See id.* Her statements were not self-serving and she had no motive to lie. *See Marshall,* 856 F.2d at 901–02; *but cf. Polansky,* 852 F.2d at 631. Mrs. Walker had personal knowledge of the subject matter of her statements, and the events she described were not so complex as to raise any serious questions concerning her ability to perceive, remember, or recount them. *See United States v. Howard,* 774 F.2d 838, 845–46 (7th Cir.1985).

Mrs. Walker's statements satisfied the other requirements of CRE 804(b)(5). Her statements were offered to establish the material fact that the defendant had a motive to kill his grandmother. Her statements were "more probative on the point for which [they were] offered than any other evidence" because they tended to prove the defendant's motive by describing actual incidents in which the defendant behaved violently toward Mrs. Walker. The admission of the statements served the general purposes of the rules of evidence and the interests of justice because they were reliable and they increased the likelihood that the jury would ascertain the truth about Mrs. Walker's murder. *See Huff,* 609 F.2d at 295. Finally, although the record does not indicate that the People specifically notified the defendant in advance of their intent to introduce the statements at trial, the defendant was well aware of the People's intention to offer the statements into evidence. Prior to trial the defendant moved to exclude all testimony from Mrs. Paddock, Mrs. Story, and two other witnesses, indicating that the defense was aware of the substance of the witnesses' testimony.[7] The defendant also called Mrs. Walker's physician as a defense witness at the trial, in an attempt to discredit Mrs. Paddock's testimony that Mrs. Walker said she suffered the detached retina when the defendant choked her. Thus the record demonstrates that the defendant had adequate notice of Mrs. Paddock's and Mrs. Story's testimony. *See United States v. Vretta,* 790 F.2d 651, 660 (7th Cir.), *cert. denied,* 479 U.S. 851, 107 S.Ct. 179, 93 L.Ed.2d 115 (1986). Under the facts of this case we hold that the notice requirement of CRE 804(b)(5) was satisfied. *See United States v. Doe,* 860 F.2d at 492; *Furtado,* 604 F.2d at 92 (notice requirement of Fed. R.Evid. 804(b)(5) should be interpreted flexibly and "with a sense of trial realities"); *see also* 4 J. Weinstein & M. Berger, *supra* at 7, § 803(24)[01] at 803–380, 381 (1988).

### B.

We also conclude that the trial court's error was harmless because the People introduced a substantial amount of evidence establishing the defendant's motive to kill his grandmother, making Mrs. Paddock's testimony cumulative.

Crim.P. 52(a), 7B C.R.S. (1986), provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." This rule recognizes that "[a] perfect trial is an impossibility and minor mistakes will inevitably occur." *People v. Taylor,* 197 Colo. 161, 164, 591 P.2d 1017, 1019 (1979); *see also Callis v. People,* 692 P.2d 1045, 1053 (Colo. 1984). "Under the harmless error rule, an error in a criminal trial will be disregarded if there is not a reasonable possibility that the error contributed to the defendant's conviction." *Tevlin v. People,* 715 P.2d 338, 342 (Colo.1986). "The proper inquiry in determining a harmless error question is whether the error substantially influenced the verdict or affected the fairness of the trial proceedings." *People v. Carlson,* 712 P.2d 1018, 1023 (Colo.1986); *Callis,* 692 P.2d at 1053.

---

**7.** The defendant moved prior to trial to exclude the testimony of the witnesses on the ground that the witnesses would "testify as to prior acts between the defendant and the alleged victim" and their testimony would be "irrelevant and highly prejudicial to the [d]efendant."

The People introduced evidence that the defendant was preoccupied with inheriting his grandmother's house and money, and often mentioned to his friends that if his grandmother died he would inherit everything. At trial the People produced a substantial amount of evidence indicating that the defendant did not care for his grandmother and plotted to kill her. Rob Witholder testified at the trial that the defendant twice approached him and asked if he would kill his grandmother. Two other witnesses corroborated Witholder's testimony by testifying that they overheard the defendant asking Witholder to kill his grandmother. The defendant also asked Stacy Kelly to kill his grandmother. At trial Kelly described how she and the defendant planned and executed Mrs. Walker's murder. Her testimony was corroborated by another witness who spent time with Kelly and the defendant on the day of the murder. In addition, the impact of Mrs. Paddock's testimony may have been lessened by the testimony of Mrs. Walker's physician, who read a letter he had written which stated that Mrs. Walker sustained the detached retina while exerting herself shoveling snow.

In light of this evidence, Mrs. Paddock's hearsay statements were cumulative, and did not substantially influence the verdict or affect the fairness of the trial proceedings. *Tevlin*, 715 P.2d at 342; *Callis*, 692 P.2d at 1053; *People v. Roark*, 643 P.2d 756, 763 (Colo.1982); *Kurtz v. People*, 177 Colo. 306, 321, 494 P.2d 97, 105 (1972); *Federal Trade Comm'n v. Amy Travel Service, Inc.*, 875 F.2d 564, 576–77 (7th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 366, 107 L.Ed.2d 352 (1989); *Nottingham v. General American Communications Corp.*, 811 F.2d 873, 877 (5th Cir.), *cert. denied,* 484 U.S. 854, 108 S.Ct. 158, 98 L.Ed.2d 113 (1987).

## IV.

■ Next we consider whether the trial court erred in admitting the hearsay testimony of Mrs. Story. Mrs. Story testified without any contemporaneous objection from the defendant that Mrs. Walker told her that the defendant threatened her with guns that the defendant kept in the house. The defendant was aware of the substance of Mrs. Story's testimony, *see* part III.A., above, but made no pretrial motion to exclude her testimony on hearsay grounds. Given the defendant's failure to object to Mrs. Story's testimony on hearsay grounds, the district court was not required to find that the evidence was admissible under CRE 804(b)(5).

■ Because the defendant did not make a contemporaneous objection to Mrs. Story's testimony, we analyze the admission of her testimony under the plain error standard of Crim.P. 52(b). *Wilson v. People*, 743 P.2d 415, 419 (Colo.1987). Crim.P. 52(b) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "[T]he appropriate standard for plain error review is whether an appellate court, after reviewing the entire record, can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Wilson*, 743 P.2d at 420; *see also People v. Jensen*, 747 P.2d 1247, 1253 (Colo.1987).

We conclude that the admission of Mrs. Story's testimony did not cast serious doubt on the reliability of the defendant's conviction. First, Mrs. Story's testimony was bolstered by the same circumstantial guarantees of trustworthiness which applied to Mrs. Paddock's testimony. *See* part III.A., above. Mrs. Story's testimony about Mrs. Walker's statements satisfied the other requirements of CRE 804(b)(5) as well. Mrs. Walker's statements were offered to establish a material fact, and were more probative than other evidence on the point because they documented actual incidents in which the defendant behaved violently towards Mrs. Walker. The admission of the statements also served the general purposes of the rules of evidence and the interests of justice. Finally, the defendant received actual notice of the substance of Mrs. Story's testimony at a pretrial hear-

748

ing. *See* note 7, above, and part III.A., above.

The admission of Mrs. Story's testimony was not plain error for the additional reason that the substantial amount of evidence of the defendant's motive and the defendant's guilt made Mrs. Story's testimony cumulative. *See Jensen,* 747 P.2d at 1253–54; *see also* part III.B., above.

## V.

 Finally, we consider whether the admission into evidence of Mrs. Paddock's and Mrs. Story's statements violated the defendant's constitutional right to confront adverse witnesses. In *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980), the Supreme Court held that "when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.'" The Court noted that "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Id.* The Court held that "[i]n other cases the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Id.* (footnote omitted). We adopted the Supreme Court's *Ohio v. Roberts* two-part analysis in *People v. Dement,* 661 P.2d 675, 680–81 (Colo.1983). The trial court did not apply the two-part test from *Roberts* and *Dement* to determine whether the admission of the testimony was constitutionally permissible.

We conclude that in this case the statements satisfied the two-part inquiry applicable to federal confrontation clause questions. Mrs. Walker was clearly unavailable to testify, and the hearsay testimony repeating her declarations was corroborated by particularized guarantees of trustwor-

thiness. *See* part III.A., above (indicia of reliability under CRE 804(b)(5)); *see also United States v. Workman,* 860 F.2d 140, 144–45 (4th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1529, 103 L.Ed.2d 834 (1989); *Nunez v. People,* 737 P.2d 422, 425 (Colo.1987).[8]

The judgment of the court of appeals is reversed.

---

8. We also conclude that any error the trial court may have made in admitting the hearsay statements was not reversible error because it was harmless beyond a reasonable doubt. *See Graham v. People,* 705 P.2d 505, 509 (Colo.1985) (if an error is of constitutional dimension, reversal is required unless the error was harmless beyond a reasonable doubt). Here the evidence of the defendant's motive and the defendant's guilt was overwhelming. There is no possibility that Mrs. Paddock's and Mrs. Story's testimony substantially influenced the jury's verdict or affected the overall fairness of the trial. *Id.* at 510.