22CA1263 Peo v Bivins 06-12-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1263
City and County of Denver District Court No. 19CR5362
Honorable Christopher J. Baumann, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Phillip R. Bivins,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE TOW
Yun and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 12, 2025

Philip J. Weiser, Attorney General, Jessica E. Ross, Senior Assistant Attorney General and Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jessica A. Pitts, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Phillip R. Bivins, appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree murder.  We affirm.

## I.     Background

¶ 2     Bivins surrendered to the police after he shot his wife, Tia Bivins, in the face.[1]  He was charged with first degree murder.

¶ 3     At trial, Bivins's defense was that the shooting was an accident.  The jury convicted Bivins of the lesser included offense of second degree murder.  The trial court sentenced him to forty-eight years in the Department of Corrections.

## II.     Courtroom Closure

¶ 4     Bivins contends the trial court violated his right to a public trial by excluding a member of the public who had violated a court order.  The People contend that, even assuming the member's exclusion was a partial closure, Bivins waived this issue by failing to object.  We agree with the People.

---

[1] Because this case involves two people with the last name Bivins, we use Tia's first name.  We mean no disrespect in doing so.

## A. Additional Background

¶ 5      During voir dire, the court stated the courtroom was open to the public and would remain so. Throughout the trial, the court noted the presence of members of the public. On the third day of trial, the court told counsel and the members of the public present in the courtroom that while the courtroom was open to the public, taking photographs and videos during trial was prohibited. The court also noted that this rule was posted on the courtroom door, that the deputies were authorized to — and should — remove anyone from the courtroom who violated the rule, and that any such person would not be allowed to return for the remainder of the trial.

¶ 6      The next day the court stated,

> Just a reminder to everybody that's in the courtroom. If you have any electronic devices, if you'll kindly put those away. You're not allowed to have those out at any time during these proceedings. One individual has already been removed from the courtroom and told not to return for violating that order. So if you could just make sure your phones are on silent and in your pocket, I would appreciate it.

The court then asked both parties if there was "anything further" before bringing in the jury. Both parties answered, "No."

### B.    Applicable Law and Standard of Review

¶ 7    We review de novo whether a claim has been waived. *Richardson v. People*, 2020 CO 46, ¶ 21.

¶ 8    "Waiver . . . is 'the *intentional* relinquishment of a *known* right or privilege.'" *People v. Rediger*, 2018 CO 32, ¶ 39 (quoting *Dep't of Health v. Donahue*, 690 P.2d 243, 247 (Colo. 1984)).

¶ 9    "Defendants . . . affirmatively waive their right to public trial by not objecting to known [courtroom] closures." *Stackhouse v. People*, 2015 CO 48, ¶ 17, *cited with approval in People v. Hernandez*, 2021 CO 45, ¶ 35.

### C.    Analysis

¶ 10    The trial court stated multiple times that the trial was a public trial, and the courtroom was open to members of the public. It told counsel that any member of the public who violated the rule against not taking photos and videos would be removed and barred from returning to the courtroom for the rest of the trial. The court also noted its order containing this rule was posted on the courtroom door. And the court informed counsel that it had excluded someone for violating that rule. These discussions, which took place in front of defense counsel, leave "no reasoned doubt," *People v. Garcia,*

2023 COA 58, ¶ 33 (citation omitted), that counsel recognized Bivins's public trial right was at stake, *see id.* at ¶ 34 (concluding that the public trial right was known to defense counsel).

¶ 11    Defense counsel's failure to object to a known closure in this context is a waiver. *See Stackhouse*, ¶ 17; *see also Garcia*, ¶ 34 (concluding that the defendant waived his public trial right by not objecting to a known courtroom closure).

¶ 12    Bivins contends that objecting to the court's plan to exclude someone who subsequently violated the rule was not objectionable so long as the court made the requisite findings under *Waller v. Georgia*, 467 U.S. 39 (1984). While defense counsel may not have needed to object before the court enforced its order to exclude anyone from the courtroom, upon learning that it had excluded someone from the trial proceedings, defense counsel still did not object, which, in this context, as noted, constitutes a waiver. *See Stackhouse*, ¶ 17; *see also Garcia*, ¶ 34.

¶ 13    Relying on *People v. Turner*, 2022 CO 50, Bivins also contends that he did not waive this contention because whether an objection was warranted was fact dependent, and defense counsel was not aware of certain circumstances. But *Turner* is inapposite. Unlike

4

the defense counsel in *Turner*, defense counsel here did not tell the trial court that she required additional information before raising Bivins's public trial right and requesting relief. *See Turner*, ¶¶ 4-5, 10-13 (concluding there was no waiver where defense counsel stated that, until he had more information, he did not have an opinion on a member of the public being excluded from the courtroom). Instead, Bivins's counsel said nothing after learning the court had excluded someone for violating the rule, and when the court asked her if she had anything further to add, she said, "No." *See Forgette v. People*, 2023 CO 4, ¶ 34 (counsel waived challenge to sleeping juror where counsel was "fully aware" of the issue but "did not object or ask the court to take any action to address the issue").

¶ 14    Bivins also contends that since the member of the public was already excluded by the time the court informed the parties, a belated objection would not have helped the court avoid the error, and it was futile to object because the spectator was presumably long gone. But because Bivins made no objection, there is no record for appellate review as to any purported violation of Bivins's public trial right, and we therefore do not know if the court could

5

have prevented or corrected any purported error. Indeed, if Bivins had objected, the court could have subsequently made the requisite *Waller* findings. *See Turner*, ¶ 25 (noting that the court may need to delay making the required *Waller* findings). But Bivins merely assumes, with no record support, that the individual was long gone.

¶ 15 Because we conclude Bivins waived his constitutional challenge, we do not address it further. *See Rediger*, ¶ 40 ("[W]aiver extinguishes error, and therefore appellate review . . . .").

### III. CRE 807

¶ 16 Bivins contends that the trial court erred by admitting hearsay evidence under the residual exception. We discern no error.

### A. Additional Background

¶ 17 At a pretrial hearing, the court ruled that it would allow the admission of testimony that two weeks before the murder, Tia told a friend — Rachel Irving — that Bivins was going to kill her and shoot her in the face at trial. At the hearing, the court heard testimony from Irving and made the following findings:

> (1) "[T]he Court finds Ms. Irving to be a credible witness, based on her statements and her demeanor while on the witness stand."

(2) Tia and Irving "had a close relationship, based on a 20-year relationship, where they confided in one another."

(3) The "statements were made in church, when they were interacting with other people around, but, generally trying to interact amongst themselves so other individuals would not hear what was being said."

(4) "The statements . . . were made when [Tia] approached Ms. Irving and voluntarily disclosed this information."

(5) "These statements concerned [Tia's] private relationship with her husband, a topic which [Tia], obviously, would be intimately familiar with."

(6) "The Court doesn't find that [Tia] had any reason to lie to her friend. She wasn't trying to cover up for a bad relationship" or "trying to protect somebody," and "by all accounts, wasn't intending on trying to hurt Mr. Bivins to any extent. She wasn't asking her to contact the police or to, necessarily, help her. She was simply confiding in Ms. Irving."

(7) Irving "had indicated that [Tia's] demeanor was scared, very straight-faced" when she shared this information, in

contrast with Tia's demeanor in making other statements or when she was singing in the choir.

¶ 18    At trial, Irving testified that Tia told her Bivins "was going to kill her, and that he was going to shoot her in the face."  The court instructed the jury that this testimony was "presented for the limited purpose of establishing intent, knowledge, and to rebut the defenses of self-defense and mistake or accident" and that it could "not consider it for any other purpose."

### B.    Applicable Law and Standard of Review

¶ 19    Under the residual hearsay exception, a statement that would otherwise be excluded as hearsay may be allowed if, among other requirements, it is supported by circumstantial guarantees of trustworthiness.  CRE 807; *see also People v. Fuller*, 788 P.2d 741, 744 (Colo. 1990).

¶ 20    In considering the trustworthiness of a statement, a court examines "the nature and character of the statement, the relationship of the parties, the probable motivation of the declarant in making the statement, and the circumstances under which the statement was made."  *Fuller*, 788 P.2d at 745.  The hearsay proponent must establish circumstantial guarantees of

trustworthiness by a preponderance of the evidence. *People v. Preciado-Flores*, 66 P.3d 155, 164 (Colo. App. 2002).

¶ 21　Trial courts have "a considerable measure of discretion" in applying this exception to the hearsay rule. *Fuller*, 788 P.2d at 744 (citation omitted).

¶ 22　We review a trial court's evidentiary rulings for an abuse of discretion. *People v. Phillips*, 2012 COA 176, ¶ 63. A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair or if it misconstrues or misapplies the law. *People v. Fallis*, 2015 COA 75, ¶ 4.

## C.　Analysis

¶ 23　Bivins contends that the totality of the circumstances showed a lack of trustworthiness because Irving reported Tia's statement months after Irving learned of Tia's death — during active litigation — and Irving's interest was to ensure Bivins's conviction at trial. We disagree.

¶ 24　Bivins's argument that Irving was motivated to lie because she wanted to see Bivins convicted at trial is unavailing. Courts look at the probable motivation of the hearsay declarant (Tia), not the witness recounting the hearsay at trial (Irving). *See Fuller*, 788 P.2d

9

at 746 (analyzing hearsay declarant's motive in making the statement).

¶ 25     Further, though the timing of Irving coming forward with Tia's statement months after learning of Tia's death and during Bivins's criminal case may raise a concern about trustworthiness, *see People v. Shifrin*, 2014 COA 14, ¶ 65, it is just one of the factors the court weighs. And when, as here, the court makes factual findings supporting its conclusion that a statement is supported by circumstantial guarantees of trustworthiness, we cannot say the court abused its discretion. *See Fuller*, 788 P.2d at 745 (concluding that the statements were supported by circumstantial guarantees of trustworthiness).

## IV.    Prosecutorial Misconduct

¶ 26     Bivins contends that the prosecutor committed misconduct during closing arguments. We disagree.

### A.    Applicable Law and Standard of Review

¶ 27     We engage in a two-step analysis when reviewing claims of prosecutorial misconduct. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). First, we determine whether the conduct was improper based on the totality of the circumstances. *Id.* In doing

10

so, we evaluate claims of improper argument in the context of the argument as a whole and in light of the evidence before the jury. *People v. Conyac*, 2014 COA 8M, ¶ 132. Next, we consider whether such actions warrant reversal under the applicable standard. *Wend*, 235 P.3d at 1096.

## B. Analysis

¶ 28 Bivins contends that the prosecutor committed misconduct during closing argument when he said, "That gun will not fire unless somebody pulls the trigger," and during rebuttal closing argument when he stated, "You have to be willing to pull the trigger." Specifically, Bivins contends that the prosecutor made an inference unsupported by the evidence because the firearm expert's testimony did not negate the possibility that the trigger had been pulled accidentally. We disagree.

¶ 29 The firearms expert testified that the gun would not fire without someone pulling the trigger and that it took between three and nine pounds of force to pull the trigger, depending on which mode the gun was in.

¶ 30 Because the evidence showed that the gun would not fire without someone pulling the trigger and that it took some force to

11

pull the trigger, it was reasonable for the jury to infer that someone had to willingly pull the trigger. Thus, no misconduct occurred because the prosecutor's comments were directly tied to the expert's testimony and did not mislead the jurors regarding the inferences they could draw from such evidence. *See People v. Herold*, 2024 COA 53, ¶ 85 (noting that prosecutors have wide latitude to argue all inferences that may reasonably be drawn from the evidence).

## V. Disposition

¶ 31    The judgment is affirmed.

JUDGE YUN and JUDGE SULLIVAN concur.