<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

Nos. 98-1223
   98-1738

               DELIA A. SMITH & JAMES ORTH, ETC.,

                     Plaintiffs, Appellees,

                               v.

                       KMART CORPORATION,

                     Defendant, Appellant.

                      ____________________

         APPEALS FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

      [Hon. Jaime Pieras, Jr., Senior U.S. District Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,

                     Selya, Circuit Judge,

               and Acosta, Senior District Judge.

                     _____________________

   Thomas M. Elcock, with whom Morrison, Mahoney & Miller was on
brief, for appellant.
   Eric M. Quetglas-Jordn, with whom Jos F. Quetglas-Jordn,
Quetglas Law Offices, Zygmunt G. Slominski, James M. Orr and
Francis & Orr, L.L.P. were on brief, for appellees.

                      ____________________

                          May 20, 1999
                      ____________________

        TORRUELLA, Chief Judge.  Before the Court is defendant-
appellant Kmart Corporation's ("Kmart") appeal of a jury verdict in
favor of husband and wife plaintiffs-appellees Delia Smith and
James Orth.  Smith and Orth brought a negligence suit when Smith
was struck by a falling ice cooler while shopping with Orth in a
Kmart store.  The jury awarded Smith and Orth damages totaling
$800,590, including $500,000 to Smith and $250,000 to Orth for
noneconomic damages.  After plaintiffs accepted a remittitur of one
portion of the award in the amount of $8,611.20, the district court
entered final judgment in favor of plaintiffs in the amount of
$1,186,428.37, representing: (1) the remitted damage awards of
$791,978.80; (2) prejudgment interest in the amount of $123,933.57;
(3) costs in the amount of $6,516; and (4) attorneys' fees in the
amount of $264,000.  Kmart appeals from this judgment, requesting
that this Court: (1) vacate the award due to errors allegedly
committed at trial, or (2) remit certain components of the damage
award due to their excessiveness.  We reject Kmart's claims of
reversible error, but agree that a portion of the damage award is
so excessive as to warrant a remittitur.
                           BACKGROUND
 Because Kmart asks us to review a jury award of damages
for excessiveness, we must examine the evidence in the light most
favorable to the award, drawing all possible inferences in its
favor.  See Havinga v. Crowley Towing and Transp. Co., 24 F.3d
1480, 1483 (1st Cir. 1994).
 At approximately 11:00 a.m. on March 4, 1995, Smith and
Orth were shopping at the Kmart store in Humacao, Puerto Rico.
They were looking at lounge chair cushions which hung from the
ceiling, and they asked a Kmart employee to assist them in bringing
one of the cushions down.  While Smith and Orth waited for that
assistance, a 48-quart Coleman ice cooler fell from a shelf behind
them.  The 8.5-pound cooler fell from a height of approximately
10.5 feet, struck Smith on the back of her head, and rolled down
her neck and shoulders.  Smith fell to her knees and then backwards
to the ground.  She lost consciousness for 40-45 seconds and
briefly stopped breathing, prompting Orth to administer mouth-to-
mouth resuscitation.
 When Smith regained consciousness, she felt a sharp pain
in her head and heard ringing in her ears.  Smith could not feel
her left side, causing her to fear that she was permanently
paralyzed.  When the paramedics arrived, they placed a cervical
collar on Smith's neck, placed a board underneath her, and moved
her into an ambulance.  Smith was taken to the Ryder Memorial
Hospital and was diagnosed with a cerebral trauma.  A CAT Scan was
performed, but the results were normal.  She was released a few
hours later with a prescription for pain medication and
instructions to remain under observation for 24 to 48 hours.
 At home, Smith suffered from dizziness, nausea,
headaches, numbness and weakness on her left side.  She also began
to experience anxiety, restlessness, irritability, sleeplessness,
difficulty with her speech, and short-term memory loss.  Smith
returned to Ryder Hospital on March 7, 1998.  She was continued on
pain medication and was prescribed a muscle relaxant and an anti-
inflammatory medication.  She was ordered to continue to rest and
to see a neurologist.  On March 16, 1995, Dr. Hctor Cases Gallardo
diagnosed Smith as suffering from a cervical radiculopathy, which
is inflammation of the nerve in the cervical root.  Dr. Cases
ordered a cervical MRI, which revealed ligament inflammation and
the swelling and sliding of a posterior disc in her neck.
Dr. Cases determined that the resulting compression on the nerve in
her cervical spine caused Smith muscle spasms, inflammation and
pain in her neck.
 Smith continued to experience muscle spasms, pain and
movement limitations, so she went to another neurologist, Dr. Angel
Chinea, on August 24, 1995.  Dr. Chinea diagnosed Smith as
suffering from a post-concussion syndrome, cervical whiplash, and
a muscular-skeletal injury to her cervical area.  Dr. Chinea also
made a clinical finding of cervical radiculopathy.  In December of
1995, Smith went to the Baylor University Medical Center in Dallas,
Texas.  She was examined by Dr. Sam Finn and placed on a six-week
rehabilitation program.  She also began a home therapy program,
which she was still engaging in as of the time of trial.
 On February 29, 1996, Smith and Orth filed a complaint
against Kmart on behalf of themselves and the legal conjugal
partnership formed by them.  The complaint was premised on
diversity jurisdiction, 28 U.S.C.  1332(a).  It alleged that Kmart
was negligently responsible for the accident and sought damages in
the form of: (1) Smith's physical and emotional pain and suffering;
(2) Orth's emotional pain and suffering and loss of consortium;
(3) the loss of work that Smith could no longer perform; (4) past
and future medical expenses; and (5) attorneys' fees and interest.
 Meanwhile, on June 12, 1996, Smith went to see
Dr. Fernando Cabrera, a psychiatrist, for the first time.
Dr. Cabrera diagnosed Smith with post-traumatic stress disorder
("PTSD").  Dr. Cabrera found that Smith suffered from nightmares,
irritability, mood changes, chronic major depression, difficulty
sleeping, and impairment in her social and occupational
relationships.  Dr. Cabrera recommended that Smith continue
psychiatric treatments for three to five years.
 During the course of discovery, the district court
ordered Kmart to produce its loss control manager, Ben Guffy, for
deposition on June 13, 1997 in Puerto Rico.  Despite the order,
Kmart failed to produce Guffy on that day and offered no
satisfactory reason for its failure.  Plaintiffs moved for
sanctions.  Although Guffy was later made available for deposition
by telephone, the district court issued a September 15, 1997 Order
noting Kmart's "reprehensible" conduct during discovery, including
its refusal to produce Guffy on the proper day and its refusal to
provide other discovery requested by plaintiffs and ordered by the
court.  The court then stated that it was considering sanctioning
Kmart by instructing the jury: (1) that Kmart refused to produce
Guffy for deposition; (2) that the jury should infer from that
refusal that Guffy's statements would have been harmful to Kmart's
case; and (3) that the jury must accept as true that Kmart knew
that merchandise in its stores was often stacked in an unsafe
manner, frequently causing that merchandise to fall from shelves
and severely injure Kmart's customers.  Kmart objected to the
giving of a sanction instruction, but did not object to the
language of the instruction.
 Trial commenced the following day.  In addition to the
medical testimony mentioned above, Dr. Chinea testified at trial
that Smith still suffers from many of the symptoms of the whiplash
injury, including muscle spasms, nerve damage, severe pain, and
decreased functioning of the cervical muscles.  Dr. Chinea
testified that this condition is permanent, meaning that the
symptoms will recur and aggravate whenever Smith engages in
physical activity.  Dr. Chinea testified that Smith will experience
pain intermittently for the rest of her life and at times will be
completely disabled for days at a time.  Dr. Chinea also testified
that Smith will have to continue with her medication and therapy
indefinitely.
 Smith and Orth testified about the accident and the
effect Smith's injury had on their lives.  Smith testified that, at
the time of her injury, she was forty-three years old and had been
married to Orth approximately three years and three months.  Smith
testified that, due to her injury, she could no longer: (1) travel
or continue with her responsibilities in their business;
(2) perform normal household chores; or (3) engage in the daily
activities of walking, dancing, and taking aerobics classes.  She
also testified that she experiences constant pain and continually
fears additional injury, to the extent that she does not go
anywhere, does not allow anyone to stand behind her, does not go
into stores like Kmart, and does not drive.
 Orth testified that he saw the accident and feared that
Smith was dead.  He testified to his observations regarding Smith's
condition and their multiple visits to various doctors.  He
testified to the medication Smith has taken and will continue to
take and to the therapy that Smith has undergone and will continue
to undergo.  He testified that he and Smith have had a strained
relationship since the accident in that they do not touch, talk, or
have a physical relationship any longer.  He testified that Smith
could no longer meaningfully help with their business and that he
now works 18 to 20 hours per day and has no personal life.  He
testified that he was also forced to do many of the household
chores Smith had done previously.  He stated that he constantly
worries about Smith's condition, but has never seen a psychiatrist
or other professional about his mental condition.
 Plaintiffs also presented testimony from their friends
and neighbors, Arlene and Patrick Fromer.  They testified that they
met the plaintiffs approximately three years before trial and that
Smith became a "different person" after the accident.  They
testified that Smith no longer engaged in activities such as
dancing, walking, and taking aerobics classes.  They testified that
their once-frequent socializing "pretty much stopped."  They also
testified that when the two couples did spend time together, Smith
was in constant pain and discomfort.
 During his closing argument, plaintiffs' counsel reviewed
the evidence presented at trial and argued that Kmart was negligent
and that this negligence caused Smith's injuries and the damages
suffered by Smith and Orth.  Plaintiffs' counsel stressed that
Kmart had a duty to keep its premises safe for its customers, but
simply "did not care" enough to do so.  Plaintiffs' counsel argued
that Kmart did not "care" about Smith, her condition, or the safety
conditions of its stores.  The only objection raised by defense
counsel complained of plaintiffs' counsel's mention of "post-
concussion syndrome," rather than post-traumatic stress disorder.
Rather than objecting to what Kmart describes now as "improper
argument," defense counsel responded with an inflammatory argument
of his own, focusing mainly on the plaintiffs' credibility in
arguing that Kmart was not negligent and that plaintiffs were
motivated by money and were deceptively inflating their damages.
In rebuttal, plaintiffs' counsel again argued that Kmart and its
doctors did not "care" about Smith.  Counsel also argued that
plaintiffs were not seeking to profit and were not asking for
punishment.  Counsel argued that plaintiffs sought only the full
amount of their damages in order to send a message to Kmart.
Counsel also reminded the jury that Ben Guffy committed an act of
defiance of the court and asked the jury to send him a message that
"in Puerto Rico we won't take this."  Defense counsel did not
object to any portion of plaintiffs' counsel's rebuttal argument.
 The district court then instructed the jury on the
applicable law.  The only instruction to which appellant objects on
appeal is the instruction given as a sanction due to Kmart's
failure to produce Guffy for deposition as ordered.  The district
court gave the instruction it previewed to the parties in its
September 15, 1997 Order.  While Kmart objected before the
instruction was given to the giving of any sanction instruction, it
did not object -- either before or after the sanction instruction
was given -- to the specific language of the instruction.
 The jury retired to deliberate and returned with a
verdict in favor of plaintiffs.  The jury found Kmart to have been
negligent and awarded: (1) $25,000 to the conjugal partnership for
past medical expenses; (2) $25,590 to the conjugal partnership for
projected medical expenses in the future; (3) $500,000 to Smith for
damages excluding medical expenses; and (4) $250,000 to Orth for
damages excluding medical expenses.
 After the jury rendered its verdict, Kmart moved for a
new trial or a remittitur of all of the awards.  The district court
found all components of the award to be amply supported by the
evidence, except the award for past medical expenses.  Thus, the
court conditionally granted the motion for a new trial.  The court
stated that it would not order a new trial if plaintiffs accepted
a remittitur of $8,611.20 of the award for past medical expenses.
Plaintiffs agreed to the remittitur, and the $25,000 award for past
medical expenses was reduced to $16,388.80, while all other
components of the damage award remained unchanged.  The court then
entered judgment awarding: (1) the remitted amount; (2) prejudgment
interest on the remitted amount; (3) costs and attorneys' fees; and
(4) post-judgment interest on the total.  Kmart immediately
appealed.
                           DISCUSSION
I.  Improper Closing Argument of Plaintiffs' Counsel
 Kmart first argues that plaintiffs' counsel's closing
argument interjected purely emotional, inflammatory, and
prejudicial elements into the jury deliberations.  Kmart argues
that this closing argument constituted plain error, warranting a
new trial despite its failure to object to the arguments at trial
and its failure to request a new trial on this basis.
 Kmart argues that plaintiffs' counsel made three types of
purely emotional, inflammatory, and prejudicial statements during
his closing argument.  First, Kmart objects to counsel's repeated
arguments that Kmart did not "care" about Smith, her alleged
condition, or the safety conditions in Kmart stores.  Second, Kmart
complains that counsel improperly asked the jury to punish Kmart
for the failure to produce Guffy for deposition.  Third, Kmart
argues that plaintiffs' counsel encouraged the jury to award
punitive damages against defendants by requesting that the jury
consider the damages associated with other potential customers.
 A.  Standard of Review
 Kmart admits that it failed to object to any of these
allegedly improper arguments and concludes from this that the
standard of review is plain error.  See Fernndez v. Corporacin
Insular De Seguros, 79 F.3d 207, 210 (1st Cir. 1996); Johnson v.
National Sea Products, Ltd., 35 F.3d 626, 631 (1st Cir. 1994).
Appellees counter that Kmart's failure to raise the improper
argument issue at any point prior to its brief on appeal results in
a total waiver of the issue, rather than plain error review.
Appellees cite two cases for the general proposition that "[i]f any
principle is settled in this circuit, it is that, absent the most
extraordinary circumstances, legal theories not raised squarely in
the lower court cannot be broached for the first time on appeal."
Teamsters, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21
(1st Cir. 1992): see also Noonan v. Winston Co., 135 F.3d 85, 89-90
(1st Cir. 1998).  Appellees also cite cases in which this court has
stated that "[w]e will not consider arguments which could have
been, but were not, advanced below," Sullivan v. National Football
League, 34 F.3d 1091, 1097 n.1 (1st Cir. 1994), cert. denied, 513
U.S. 1190 (1995), and that "it is a bedrock rule that when a party
has not presented an argument to the district court, she may not
unveil it in the court of appeals," United States v. Slade, 980
F.2d 27, 30 (1st Cir. 1992).
 The appellees' citations overlook the basic difference
between waiver and forfeiture.  See United States v. Olano, 507
U.S. 725, 732-33 (1993); United States v. Mitchell, 85 F.3d 800,
807-08 (1st Cir. 1996).  The overwhelming weight of the authority
supports the rule that, when no timely objection is made, claims of
improper closing argument are forfeited, not waived, and thus
amenable to review for plain error.  See Fernndez, 79 F.3d at 210;
Johnson, 35 F.3d at 631; Anthony v. G.M.D. Airline Services, Inc.,
17 F.3d 490, 496 n.7 (1st Cir. 1994); DeVasto v. Faherty, 658 F.2d
859, 864 (1st Cir. 1981).  Even courts which purport to foreclose
review of such claims due to the absence of an objection make
exceptions tantamount to plain error review.  See, e.g., Doty v.
Sewall, 908 F.2d 1053, 1056 (1st Cir. 1990) (stating that issues
regarding twelve items of impermissible argument or evidence were
not properly preserved for appeal due to the failure to object, but
still allowing review upon a showing of "substantial injustice");
Wildman v. Lerner Stores Corp., 771 F.2d 605, 609 (1st Cir. 1985)
(stating that review of a claim of improper closing argument was
"foreclosed" due to the failure to object, but still determining
whether review was required to prevent a miscarriage of justice
despite the lack of an objection).  Thus, we review Kmart's claims
for plain error.
 Under plain error review, we will consider a forfeited
objection only if: (1) an error was committed; (2) the error was
"plain" (i.e. obvious and clear under current law); (3) the error
was prejudicial (i.e. affected substantial rights); and (4) review
is needed to prevent a miscarriage of justice.  See Chute v. Sears
Roebuck and Co., 143 F.3d 629, 631 (1st Cir. 1998); United States
v. Bartelho, 129 F.3d 663, 673 (1st Cir. 1997), cert. denied, 119
S. Ct. 241 (1998).  To merit reversal, the error must have
"resulted in a miscarriage of justice or seriously affected the
fairness, integrity or public reputation of the judicial
proceedings."  Coastal Fuels of Puerto Rico, Inc. v. Caribbean
Petroleum Corp., 79 F.3d 182, 189 (1st Cir.) (citation and internal
quotation marks omitted), cert. denied, 117 S. Ct. 294 (1996).
Plain error is a "rare species in civil litigation," encompassing
only those errors that reach the "pinnacle of fault" envisioned by
the standard set forth above.  See Cambridge Plating Co., Inc. v.
Napco, Inc., 85 F.3d 752, 767 (1st Cir. 1996) (citations omitted).
 B.  The Alleged Instances of Improper Argument
 Kmart's first claim of improper argument centers on
plaintiffs' counsel's nine references that Kmart did not "care"
about Smith or safety conditions at its stores.  As noted by
appellant, "[i]ntroduction of purely emotional elements into the
jury's deliberations is clearly prohibited conduct."  Doty, 908
F.2d at 1059 (citing Polansky v. CNA Ins. Co., 852 F.2d 626, 630
(1st Cir. 1988)).  Appellees argue that counsel's references were
not such emotional appeals, but rather were proper arguments
addressed to the negligence issues of whether Kmart knew or could
foresee that injuries would occur, but still failed to prevent
them.  
 Viewed in context, some of plaintiffs' counsel's
references do appear to have been properly directed towards the
knowledge, foreseeability, and breach of duty questions.  Others,
however, do not.  For example, counsel argued at one point that
Kmart and its doctors "don't care at all" about Smith personally,
which is quite different than arguing that Kmart did not care about
or take steps to prevent the possibility of injury.  There were
other instances in which plaintiffs' counsel argued that Kmart
"does not care," in the present tense, which has little bearing on
the question of Kmart's negligence at the time of the accident.
Counsel also argued that Kmart did not even care enough to make
Guffy available to give a deposition in the case.  Finally, counsel
argued that Kmart did not care because it was not paying the true
amount of damages that it caused.  The import of these remarks was
to stain the corporate character of Kmart in front of the jury.
This is improper argument.
 Kmart's second claim is that plaintiffs' counsel
improperly asked the jury to punish Kmart for failing to produce
Guffy for deposition by awarding a greater amount of damages.
Appellees argue that their counsel made no such argument.  During
rebuttal, plaintiffs' counsel argued:
   Now, what we do want here is that this same
 thing not continue to happen.  And I am not
 asking for punishment, I'm asking to send a
 message to this guy, [Ben Guffy], who even
 committed an act of defiance to this Court.
 That's why an order is here.  And you send a
 message to this guy, that in Puerto Rico we
 won't take this.  And if they allow it, they
 were to pay the full price.
 Appellees claim that when counsel argued "we don't take
this," he meant that the public would not tolerate the unsafe
conditions in the Humacao Kmart store.  We agree with appellees
that it is reasonable to interpret this passage as asking the jury
to send a message about the unsafe conditions that caused the
accident, while simultaneously reminding the jury that Guffy failed
to appear for deposition and that an instruction existed to punish
Kmart for that failure.
 Still, counsel's reminder was improper to the extent that
it was a request for a punitive form of damages, and it was also
improper because it attempted to sanction Kmart a second time for
its failure to produce Guffy for deposition.  Because the district
court had already determined that it would punish Kmart for that
failure in the form of an instruction to accept certain facts as
true, this solicitation of a second sanction was improper.  Cf.
Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd., 930
F.2d 1021, 1027 (2d Cir. 1991) (finding error when a district court
first sanctioned a party for late production of documents by
precluding the introduction of evidence and then effectively
allowed the jury to sanction the party a second time by instructing
the jury that it could consider the late production).
 Kmart's final claim of improper argument asserts that
plaintiffs' counsel encouraged the jury to award punitive damages
against Kmart in excess of any compensable damages for injuries
actually suffered by appellees.  Kmart claims that counsel asked
the jury to consider the injuries allegedly suffered by other
individuals.  We cannot agree with this contention.  Even the
excerpt cited by Kmart specifically states that plaintiffs' counsel
was asking for "the full price, not more than that."  Counsel did
attempt to portray the magnitude of the alleged safety problem by
estimating the number of accidents in Kmart stores nationally.
Counsel also spoke in general terms in stating that "every customer
is entitled to be safe" and that "if you have an injury, you have
a right to be treated fairly."  However, Kmart points to no
instance -- and we can find none -- in which counsel argued that
the jury should award appellees additional damages for this general
problem or for any injuries allegedly suffered by others.
 In sum, while some of the arguments complained of by
Kmart were proper, others were clearly not.
 C.  Prejudice to Substantial Rights
 Kmart faces an uphill battle in attempting to show
prejudice because, on this record, we are confident in stating that
a verdict in favor of the plaintiffs was inevitable.  Whether the
improper arguments identified above were responsible for elevating
the award to an excessive one is highly debatable.  Kmart now
argues that the excessive award was caused by the improper argument
of plaintiffs' counsel, but it made no such claim in its post-trial
motion for judgment as a matter of law, a new trial, or remittitur.
Nor did Kmart raise the improper argument issue in its statement of
issues filed under former Fed. R. App. P. Rule 30(b).  These
omissions cast doubt on whether Kmart itself believed that the
alleged excessiveness of the award was caused by plaintiffs'
counsel's closing argument.
 Several other factors could have caused or contributed to
the substantiality of the award.  We have already found many of
appellees' counsel's arguments to be proper, and the jury may well
have been influenced to grant such a substantial award by those
proper arguments.  The jury may have been swayed by the extensive
expert medical testimony in this case or by the emotional testimony
of Smith or Orth.  Or the jury may have been inflamed by Kmart's
trial tactics (including the choice to dangle the offending cooler
over Smith's head) or by Kmart's own improper argument.
Additionally, the district court took precautions in its
instructions to minimize the chance of a verdict based on passion
or prejudice.  The jury was instructed that: (1) its duty was to
follow the law; (2) the attorneys' statements were not evidence;
(3) it should apply the law without being governed by sympathy or
prejudice; and (4) plaintiffs were only entitled to receive
compensatory damages for injuries they had suffered and proven.  As
a result, we are not persuaded that plaintiffs' counsel's improper
argument caused whatever excessiveness may exist in the award.
 D.  Miscarriage of Justice
 Even if Kmart could demonstrate some degree of prejudice
resulting from  plaintiffs' counsel's argument, we still would not
count this case among the "rare species" of civil cases that must
be reversed due to plain error.  Kmart must demonstrate that the
error "resulted in a miscarriage of justice or seriously affected
the fairness, integrity or public reputation of the judicial
proceedings."  Coastal Fuels, 79 F.3d at 189.  We do not find such
a miscarriage in this case, where Kmart's own closing argument was
nearly as improper as that of which it complains.  Kmart repeatedly
introduced emotional elements of its own into the jury's
deliberations in response to plaintiffs' counsel's attempts to
paint Kmart as an uncaring villain.  Kmart sought to demonize the
plaintiffs when, under the guise of credibility arguments, defense
counsel argued: (1) that Smith forgot she was supposed to be in
pain until her lawyer reminded her; (2) that Orth was planning
litigation rather than attending to his supposedly injured wife;
and (3) that Orth claimed to have seen another person express shock
at "what [they]'ve done" to hide the fact that he caused the
accident himself.  Both sides made emotional arguments in this
case, sometimes proper, sometimes not.  But it is hardly a
miscarriage of justice when a party fails to object to improper
argument by its opponent and chooses to retaliate with improper
argument of its own, only to have this strategic decision backfire
when the jury returns a substantial award against it.
 For all of these reasons, we find no reversible error
either in plaintiffs' counsel's summation or in the district
court's failure sua sponte to grant a new trial due to that
summation.
II.  Improper Sanction Instruction
 Kmart's second argument is that the district court abused
its discretion in giving the sanction instruction that it gave to
punish Kmart for failing to produce Guffy for deposition.  Kmart
recognizes that the choice of sanctions for failing to comply with
a discovery order lies within the sound discretion of the court.
See Marx v. Kelly, Hart & Hallman, P.C., 929 F.2d 8, 10 (1st Cir.
1991).  Kmart also concedes that it is proper for a trial judge to
sanction a party for its failure to appear for deposition pursuant
to Fed. R. Civ. P. 37(b)(2)(A) & (B) and  Fed. R. Civ. P. 37(d) by
instructing the jury to assume that the party's testimony would
have been unfavorable.  What Kmart objects to here is the language
of the sanction instruction given.
 Kmart acknowledges that it would not have been an abuse
of the district court's discretion to have instructed the jury to
accept as true that Kmart was on notice that merchandise in the
Humacao store was stacked in a dangerous manner.  Kmart argues that
the district court crossed the line when it instead instructed:
   From K-Mart's refusal to produce its loss
 control manager, the Court instructs you that
 the loss control manager's statements would
 have been harmful to K-Mart's case.
 Therefore, you are instructed to accept as
 true that K-Mart knew that merchandise in its
 store was often stacked in an unsafe manner,
 frequently causing that merchandise to fall
 from shelves and injuring K-Mart customers.

 Kmart argues that this instruction improperly
communicated to the jury that Kmart knew of a serious, nationwide
safety problem that frequently caused injuries to Kmart customers.
Kmart argues that this message caused the jury to award damages
designed to punish Kmart for this nationwide problem.
 Again, Kmart complains after failing to raise an
objection before the trial court, as is required by Rule 51 of the
Federal Rules of Civil Procedure.  Therefore, we review the
challenged jury instruction for plain error.  See Chute, 143 F.3d
at 631; TransAmerica Premier Ins. Co. v. Ober, 107 F.3d 925, 933
(1st Cir. 1997); Poulin v. Greer, 18 F.3d 979, 982 (1st Cir. 1994).
 While the language of the instruction was not perfect,
there was no plain error.  We do not read the instruction, as Kmart
does, to establish that Kmart had a nationwide safety problem.  The
sanction instruction referred only to "the store" and did not
attempt to establish any facts regarding other Kmart stores.  With
regard to the statements that merchandise in the store was "often"
stacked in an unsafe manner and that merchandise "frequently" fell
and injured customers, we do not find this language, in the absence
of a focused objection, to fall outside the scope of the district
court's discretion.  Rule 37(b)(2)(A) authorizes the district court
to enter an order stating that the matters that were the subject of
the discovery order that was violated shall be taken to be
established.  Fed. R. Civ. P. 37(b)(2)(A).  Guffy was Kmart's loss
control manager, and the purpose of taking his deposition was to
determine facts regarding: (1) merchandise display and storage, and
(2) the extent of similar accidents and injuries occurring in Kmart
stores.  When Kmart violated the court's order by failing to
produce Guffy for deposition, it was proper for the district court
to sanction Kmart by instructing the jury to accept the unfavorable
proposition that plaintiffs hoped to prove during Guffy's
testimony: that unsafe merchandise display practices had caused
similar accidents and injuries in the relevant Kmart store.
Therefore, the giving of this particular sanction instruction does
not warrant a new trial.
III.  Grossly Excessive Damage Awards
 Kmart's final argument requests a remittitur of the
damages awarded to Smith and Orth because the amounts of those
awards are so grossly excessive as to constitute a miscarriage of
justice.  Kmart does not challenge the awards to the conjugal
partnership for past and future medical expenses in the combined
amount of $41,978.80.  Rather, Kmart challenges only the awards to
Smith and Orth for damages excluding medical expenses in the
amounts of $500,000 and $250,000, respectively.
 Kmart has apparently dropped its request for a new trial
on this ground and argues only that this Court should order a
remittitur of both awards.  We review the denial of a motion for a
remittitur for abuse of discretion.  See Anthony, 17 F.3d at 493;
McDonald v. Federal Laboratories, Inc., 724 F.2d 243, 246 (1st Cir.
1984).  We will find an abuse of discretion only if the jury's
verdict exceeds "any rational appraisal or estimate of the damages
that could be based on the evidence before the jury."  Milone v.
Moceri Family, Inc., 847 F.2d 35, 36 (1st Cir. 1988) (quoting Segal
v. Gilbert Color Systems, Inc., 746 F.2d 78, 81 (1st Cir. 1984)).
We have noted that "the obstacles which stand in the path of" such
claims of excessiveness "are formidable ones."  Wagenmann v. Adams,
829 F.2d 196, 215 (1st Cir. 1987).  Translating legal damage into
money damages is a matter "peculiarly within a jury's ken,"
especially in cases involving intangible, non-economic losses.
Id.; see also Correa v. Hospital San Francisco, 69 F.3d 1184, 1197
(1st Cir. 1995) ("An appellate court's normal disinclination to
second-guess a jury's evaluation of the proper amount of damages is
magnified where, as here, the damages entail a monetary valuation
of intangible losses, and the trial judge, having seen and heard
the witnesses at first hand, accepts the jury's appraisal."), cert.
denied, 517 U.S. 1136 (1996). Viewing the evidence in the light
most favorable to the verdict, the jury's assessment of damages
will not be disturbed unless it is "grossly excessive, inordinate,
shocking to the conscience of the court, or so high that it would
be a denial of justice to permit it to stand."  Id. (quoting Segal,
746 F.2d at 80-81) (internal quotation marks omitted).
 The district court instructed the jury that plaintiffs'
damages excluding medical expenses were for "physical and emotional
pain and suffering already suffered or to be suffered in the
future."  The court defined "pain and suffering" damages to include
any damages for loss of enjoyment of life that he or she is
reasonably certain to suffer in the future, taking into account
each plaintiff's past interests and way of life.  The court then
defined "damages for enjoyment of life" to include damages for
"loss of consortium, including reduction in sexual relations,
affection, comfort, companionship, conjugal life, fellowship,
society and/or the assistance that accompanies the marriage
relationship."  The court then instructed the jury that it could
award only those types of damages.  As a result, the two awards at
issue can only be said to reflect damages for: (1) past and future
physical pain and suffering; (2) past and future emotional pain and
suffering; and (3) loss of enjoyment of life, including loss of
consortium.
 A.  Smith's Award of $500,000
 In light of the deference owed the jury award under this
standard, we do not find that the $500,000 award to Smith is so
excessive as to warrant a remittitur.  The evidence of Smith's
physical and emotional pain and suffering is abundant.  There was
evidence that Smith has been in near-constant pain since the blow
to her head, neck and shoulders at approximately 11:00 a.m. on
March 4, 1995.  Smith stopped breathing and was unconscious for
approximately forty seconds.  She lost feeling on the left side of
her body, causing her to fear paralysis.  She was then rushed to
the hospital in a cervical collar and given pain medication for a
head trauma.  Smith then experienced additional pain, numbness,
difficulty speaking, and muscle limitations, causing her to visit
several other doctors.  Smith has been under various medications
for pain and inflammation since her first visit to the hospital.
Smith has experienced severe depression, anxiety, irritability,
restlessness, sleeplessness, and short-term memory loss.
Dr. Chinea testified that Smith will suffer from intermittent pain,
muscle spasms, and decreased functioning of her cervical muscles
for the rest of her life.  Dr. Chinea also testified that these
symptoms recur and aggravate whenever Smith engages in the simplest
of physical activity, and will continue to do so.  Smith has been
diagnosed with PTSD, exhibiting the symptoms of nightmares, mood
changes, major depression, sleeplessness, and impairment of
relationships.  While Kmart took steps to minimize this physical
and emotional pain and suffering before the jury, we must now view
the evidence in the light most favorable to the verdict.  Viewed in
that light, we note that the record teems with evidence of Smith's
past and future pain and suffering.
 There was also substantial evidence presented regarding
Smith's loss of enjoyment of life.  Testimony by Smith and her
doctors established that Smith was simply unable to engage in many
of the physical activities she had enjoyed in the past, including
dancing, walking, and taking aerobics classes.  Smith testified
that she is unable to drive a car or venture out beyond her house
due to her fear of additional injury.  Smith and Orth testified to
the great strain that has been placed on their relationship and to
the marked decrease in the amount of socializing with friends.  If
the jury believed this testimony -- which it is entitled to do
without judicial second-guessing of its credibility determinations
-- the jury was faced with a plaintiff who is virtually unable to
leave her home, unable to perform any physical activity, and unable
to maintain normal social relationships.  Such limitations amount
to a substantial loss of the opportunity to enjoy life as Smith had
prior to the accident.
 While we agree with Kmart that this award was certainly
generous, we do not find it to be "grossly excessive" or "shocking
to the conscience," in light of the extensive evidence of the pain
and suffering endured and yet to be endured by Smith and the
limitations that her condition has placed on her ability to enjoy
life.  We have upheld awards for pain and suffering and lost
enjoyment damages in the range of the damages awarded to Smith.
See, e.g., Correa, 69 F.3d at 1198 (upholding: (1) a $200,000 award
for the pain and suffering experienced by Carmen Gonzlez Figueroa
for the few hours prior to her death, following the negligence of
the hospital she appeared at complaining of dizziness and chest
pains, and (2) a combined $500,000 award for the pain and suffering
of Gonzlez' heirs); Hogan v. Bangor and Aroostook Railroad Co., 61
F.3d 1034, 1037-38  (1st Cir. 1995) (upholding $200,000 award for
emotional distress, inconvenience, mental anguish, and loss of
enjoyment of life in the absence of any physical injury, when
defendant refused to allow plaintiff to return to work, causing
plaintiff to be depressed and to give up his usual activities);
Havinga v. Crowley Towing and Transp. Co., 24 F.3d 1480, 1483 (1st
Cir. 1994) (upholding several awards for pain and suffering and
loss of enjoyment of life ranging from $200,000 to $450,000 when
evidence was presented that the plaintiffs suffered severe
emotional and psychological injuries which significantly affected
the quality of their lives and caused each to avoid activities in
which he had previously engaged); Ruiz v. Gonzlez, 929 F.2d 31,
34-35 (1st Cir. 1991) (upholding a past and future damages award of
$350,000 when there was evidence that plaintiff was diagnosed with
post-traumatic stress disorder and suffered a permanent partial
disability, although a portion of the award could have represented
lost future earnings).
 In Anthony, we found a $566,765 award for pain and
suffering to be so grossly disproportionate to the plaintiff's
injury as to be unconscionable.  See Anthony, 17 F.3d at 494.
However, in that case, we based our finding of excessiveness on
several factors.  First, there was no evidence that the plaintiff's
leg injury prevented him from engaging in any particular
activities.  See id.  Second, there was no evidence that the injury
otherwise interfered with the plaintiff's professional,
recreational, or personal life.  See id.  Third, the physical
injury was not particularly severe or painful and required no major
medical treatment.  See id.  Finally, there was no evidence that
the plaintiff's injury was permanent.  See id.  While each
aggravating factor was absent in Anthony, each aggravating factor
is present in Smith's case.  Thus, our holding in Anthony is of
little assistance.
 Kmart offers a series of damage awards in various state
courts ranging from $3,000 to $132,215 for what Kmart terms "soft
tissue injuries" comparable to Smith's injuries.  From this, Kmart
argues that the award to Smith should be reduced to more closely
match those awards.  However, even if we could accept Kmart's
belittling characterization of Smith's injuries, the existence of
smaller damage awards in other jurisdictions, based upon different
factual scenarios, does not render the present award "grossly
excessive."  We do not disagree that the present award is generous
in comparison to the awards given by Kmart as examples, but we have
stated in the past that "merely showing that the damage award is
generous in comparison to other (hand-picked) cases is insufficient
to warrant relief."  See Correa, 69 F.3d at 1198 (citing Havinga,
24 F.3d at 1488-89).  Thus, Kmart's tour of personal injury cases
in courts from California to Maine does not dissuade us from
finding that the evidence before the jury was sufficient to support
the $500,000 award to Smith for past and future pain and suffering,
emotional distress, and lost enjoyment of life.
 B.  Orth's Award of $250,000
 Unfortunately for plaintiffs, the same cannot be said of
the $250,000 award to Orth.  As a bystander to Smith's injury, Orth
has no physical injuries of his own.  While this does not preclude
Orth from recovering for his emotional pain and suffering and for
his lost enjoyment of life, it does preclude him from recovering
for a category of injury -- past and future physical pain and
suffering -- that makes up a substantial portion of Smith's award.
 Additionally, the evidence of Orth's emotional pain and
suffering was considerably less than the evidence of Smith's
emotional pain and suffering. Since Orth has not seen a
psychologist, psychiatrist or therapist for his emotional distress,
there was no expert testimony on this issue whatsoever.  Orth
testified to his horror in watching as Smith was struck by the
cooler and lost consciousness.  Orth testified that he performed
CPR on Smith and thought, at various times, that she was either
dead or paralyzed.  Orth testified to all of the medical visits on
which he accompanied Smith and testified to his constant worry over
her condition.  He testified that he was "emotionally tired,
mentally tired, [with] periods of fear."  In addition to Orth's
testimony, Arlene Fromer (and Patrick Fromer, through a
stipulation) testified that the accident "really impacted James"
and that Orth was constantly worried about Smith's condition.  This
evidence amply demonstrates that Orth witnessed a distressing event
and is now often a tired and worried individual, but hardly
approaches the emotional pain and suffering required to sustain
such a substantial award.
 Regarding Orth's loss of enjoyment of life, including
loss of consortium, the evidence is nearly as limited.  Orth
testified that Smith performed two to three hours of housekeeping
work per day before the accident, but could only manage 45 minutes
to an hour of such work after the accident.  Orth testified that he
was forced to do all of the cooking each night, but that they hired
someone to help with the other housework.  Orth testified that he
no longer has a personal life because he works 18-20 hours per day
to compensate for the amount of work that Smith can no longer
perform.  Orth testified that he and Smith have a strained
relationship in that "we don't touch, we don't talk, we don't have
a physical relationship anymore."  Orth testified that, before the
accident, they had considered starting a family.  The Fromers
testified that Orth had to take over many of the household
responsibilities that Smith was once able to do.  The Fromers also
testified that Smith and Orth stopped socializing with them after
the accident.  This evidence of Orth's loss of enjoyment of life
and loss of consortium simply does not rise to a level commensurate
with the amount of damages awarded.
 In short, we find the jury's $250,000 award to Orth for
past and future emotional pain and suffering, loss of enjoyment of
life, and loss of consortium to be "grossly excessive, inordinate,
shocking to the conscience of the court, [and] so high that it
would be a denial of justice to permit it to stand."  Correa, 69
F.3d at 1197 (quoting Segal, 746 F.2d at 80-81) (internal quotation
marks omitted).  Because the jury's verdict in this regard exceeds
"any rational appraisal or estimate of the damages that could be
based on the evidence before the jury," Milone, 847 F.2d at 36, we
find that the district court abused its discretion in denying
Kmart's motion for a remittitur of Orth's award.  Accordingly, we
remand this case with instructions to vacate the $250,000 award to
Orth for his damages excluding medical expenses and order a new
trial on this issue, unless Orth agrees to remit all of that award
in excess of $100,000.  After carefully reviewing the evidence of
Orth's damages that was presented at trial and examining the
various types of injuries and damage awards of the cases cited
supra at pp. 22 and 25, we conclude that $100,000 represents the
upper limit of a rational appraisal of Orth's damages.
                           CONCLUSION
 Based on the foregoing, the portion of the judgment
awarding Smith $500,000 in damages excluding medical expenses is
AFFIRMED.  This case is REMANDED to the district court with
instructions to set a deadline by which plaintiffs must accept or
reject a remittitur of the $250,000 award for Orth's damages
excluding medical expenses to $100,000.  If plaintiffs elect to
accept this remittitur, the district court shall modify the
judgment accordingly.  If plaintiffs elect not to accept this
remittitur, the district court shall vacate the judgment and order
a new trial on the issue of Orth's damages excluding medical
expenses.

</body>

</html>